GREGORY A. MCDONNELL
**ORR MCDONNELL LAW, PLLC**
627 Woody Street
Missoula, MT 59802
Telephone: (406) 543-0999
Facsimile:  (406) 552-0560
greg@omlmt.com
katie@omlmt.com

RACHELE R. BYRD*
**WOLF HALDENSTEIN ADLER**
**FREEMAN & HERZ LLP**
750 B Street, Suite 1820
San Diego, CA  92101
Telephone:  (619) 239-4599
Facsimile:   (619) 234-4599
byrd@whafh.com
*pro hac vice forthcoming*

*Attorneys for Plaintiff James Patterson*

## UNITED STATES DISTRICT COURT
## DISTRICT OF MONTANA
## HELENA DIVISION

| | |
|---|---|
| JAMES PATTERSON,<br><br>　　　　　*Plaintiff,*<br><br>v.<br><br>CINDY PATTERSON,<br><br>　　　　　*Defendant.* | Case No. CV-26-48-H-JTJ<br><br>**VERIFIED COMPLAINT FOR:**<br>**(1) LIBEL; (2) SLANDER; AND**<br>**(3) INJUNCTIVE RELIEF** |

1

Doc ID: e938cf41e00d173d999713246c7391c5e2ed83e7

## **INTRODUCTION**

1.     Plaintiff James Patterson ("Plaintiff") brings this action because Defendant Cindy Patterson ("Defendant") transformed a deteriorating marriage and related financial dispute into a campaign of false accusations aimed at the very relationships, licenses, endorsements, and institutions on which Plaintiff's livelihood depends.

2.     Plaintiff is a longtime clinician, chaplain, ordained minister, military officer, VA chaplain, and owner of Emmaus Counseling Services of Montana. Before marrying Defendant, a former counseling client whose professional relationship with Plaintiff had ended more than a year earlier, Plaintiff reviewed the Montana ethical rules, sought guidance from a qualified professional, and confirmed his good faith understanding that the relationship was ethically permissible.

3.     When Plaintiff later refused Defendant's demands for money, control over funds, and false admissions of grooming, exploitation, sexual impropriety, professional misconduct, and financial wrongdoing, Defendant followed through on threats to "ruin" and "destroy" him by publishing those accusations to churches, pastors, prayer networks, Christian media outlets, counseling clients and professionals, licensing boards, Plaintiff's ordination sponsor and religious endorser, military leadership, Montana public bodies, and social media. Those publications caused concrete professional harm, including loss or transfer of a counseling client,

2

Doc ID: e938cf41e00d173d999713246c7391c5e2ed83e7

disruption of clinical-supervision relationships, multi-state licensing exposure, a Wyoming Air National Guard investigation, risk to Plaintiff's religious endorsements, the potential loss of Plaintiff's ordination through The Vine Network, and emotional distress.

## PARTIES

4.      Plaintiff James Patterson ("Plaintiff") is a resident of Helena, Montana. Plaintiff holds a Bachelor of Arts degree in Religion (1991), a Master of Arts in Counseling (1996), a Master's Degree in Divinity (1998), and has earned his Diploma (*i.e.,* master's degree) in Clinical Pastoral Education (2006). Plaintiff served as Adjunct Clinical Faculty in Family Medicine/Behavioral Medicine with University of Wyoming Family Medicine; is a Chaplain/Lieutenant Colonel with the United States Air National Guard; is a Board Certified Chaplain with a clinical specialty certification in Mental Health with the Montana Veterans Affairs Health Care System (the "MTVAHCS"); served on, and, for two (2) years, served as Chairman of the Medical Ethics Committee for the MTVAHCS; is an ordained minister and chaplain with the Department of Veterans Affairs ("VA"); and has received the Distinguished Service Award from the Military Chaplains Association of the United States of America. Plaintiff has spent over thirty-five (35) years as a clinician, chaplain, and member of the armed forces, he has extensive experience as a youth pastor, senior pastor, and chaplain, and he has logged several thousand hours

3

Doc ID: e938cf41e00d173d999713246c7391c5e2ed83e7

in various areas of counseling. Plaintiff owns and operates a counseling firm called Emmaus Counseling Services of Montana ("Emmaus"), which he founded in 2019. Emmaus employs four (4) therapists, including Plaintiff. Plaintiff is a private person and is not a public official, public figure, limited-purpose public figure, or person who voluntarily placed himself into any public controversy concerning Defendant's false accusations.

5.    Defendant Cindy Patterson ("Defendant") is currently a resident of West Virginia. Upon information and belief, she moved to West Virginia on May 30, 2025. Defendant was a resident of Helena Montana during many of the events giving rise to this complaint.

**JURISDICTION AND VENUE**

6.    This Court has subject matter jurisdiction under 28 U.S.C. §§ 1332. Plaintiff is a citizen and resident of Montana. Defendant is, upon information and belief, a citizen and resident of West Virginia. The parties are completely diverse, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

7.    This Court has specific personal jurisdiction over Defendant because this action arises from Defendant's intentional tortious conduct directed into Montana and resulting in injury to Plaintiff in Montana. As alleged herein, Defendant published false statements about Plaintiff, a Helena, Montana resident, to Montana recipients and Montana-connected institutions, including Plaintiff's Helena church,

4

Doc ID: e938cf41e00d173d999713246c7391c5e2ed83e7

a Helena Assemblies of God church, the Montana Board of Behavioral Health, a Montana legislative committee, and the Montana Licensing Reform Task Force. Defendant also submitted public comments to committee(s) of the Montana Legislature and uploaded supporting materials to Montana governmental websites containing defamatory statements about Plaintiff. Defendant's conduct was expressly aimed at Montana and at Montana-connected audiences. Plaintiff lives and works in Helena, Montana, owns and operates Emmaus Counseling Services of Montana, holds Montana professional licenses, serves Montana clients, and depends on Montana-centered professional, religious, licensing, and business relationships. Defendant knew or reasonably should have known that the brunt of the reputational, professional, business, licensing, and emotional harm from her statements would be suffered in Montana.

8.    Venue is appropriate under 28 U.S.C. § 1391(b)(2) as a substantial part of the events giving rise to this complaint occurred in the District of Montana. Defendant's defamatory campaign targeted Plaintiff in Helena, Montana included publications to Montana recipients and Montana governmental bodies, involved materials uploaded to Montana public websites, and caused injury to Plaintiff's reputation, counseling practice, professional relationships, licenses, and livelihood in Montana.

Doc ID: e938cf41e00d173d999713246c7391c5e2ed83e7

## FACTS

### Background

9.     Plaintiff and Defendant met in Montana in 2014 when Plaintiff became Defendant's professional counselor. Defendant attended weekly counseling sessions with Plaintiff over the course of five (5) years. Not once during that time did Defendant allege that Plaintiff conducted himself inappropriately. Plaintiff's professional relationship as Defendant's counselor ended on December 10, 2019.

10.     Thereafter, every couple of months or so Defendant would send Plaintiff a text message about a question she had or about her well-being. Only one time between December 10, 2019 and August 13, 2020 did Plaintiff reach out to Defendant first. It was in April 2020, during the COVID-19 pandemic, that Plaintiff inquired about Defendant's well-being via text message. Otherwise, Defendant initiated all of their contacts during that time.

11.     On or about the first week of July 2020, Defendant moved to Texas. In the middle of August 2020, Defendant asked Plaintiff for a referral for a friend. Defendant thereafter began to aggressively pursue Plaintiff. Within the next month, Defendant told Plaintiff over the phone that God had told her a couple years prior that she and Plaintiff would be getting married. Thereafter, Plaintiff and Defendant became long distance friends, communicating over the phone or via text message.

6

Doc ID: e938cf41e00d173d999713246c7391c5e2ed83e7

12.     Plaintiff was generally aware that there were Montana ethical rules that governed therapists and prohibited them from entering into romantic relationships with their clients and, under some circumstances, former clients. Because Plaintiff did not want to violate any applicable ethical rules, before dating Defendant, on September 13, 2020, he checked the Montana Board of Behavioral Health ("MBBH") website and reviewed the posted Administrative Rules of Montana. Plaintiff found posted on the website Admin. R. Mont. 24.219.807. When Plaintiff looked at the rule, it did not have a waiting period for entering into romantic relationships with former clients. It only provided with respect to former clients that he not "exploit" the relationship. Specifically, the posted rule provided in relevant part: "Licensees shall not . . . (iv) exploit in any manner the professional relationships with clients or former clients . . .; [or] (v) engage in or solicit sexual relations with a client or commit an act of sexual misconduct or a sexual offense if such act, offense, or solicitation is substantially related to the qualifications, functions, or duties of the licensee . . . ."

13.     Plaintiff did not rely solely on his own interpretation of the ethical rules. In October 2020, he consulted with his therapist, an approved supervisor with the American Association for Marriage and Family Therapy, for professional guidance. Plaintiff's therapist advised that, under the circumstances presented, a potential relationship with Defendant would constitute a separate and distinct relationship

Doc ID: e938cf41e00d173d999713246c7391c5e2ed83e7

rather than an impermissible dual relationship and therefore would not violate applicable ethical standards. This independent consultation further reinforced Plaintiff's good faith understanding of his obligations.

14.    On February 1, 2021, eleven days before marrying Defendant, Plaintiff and Defendant exchanged text messages about Admin. R. Mont. 24.219.807. Defendant appeared to be concerned that Plaintiff may be getting cold feet about marrying her, and Defendant asked Plaintiff, "So we're still good for february 12? Lol," and Defendant reassured Plaintiff, "Exploit means to take advantage of someone for gain which is not what is done in our situation."

So, we're still good for february 12? Lol   03:08

\\

8

Doc ID: e938cf41e00d173d999713246c7391c5e2ed83e7



They then mutually decided to proceed with getting married in Fort Collins, Colorado on February 12, 2021.

15.    In early February 2021, shortly before the parties' marriage, Plaintiff again revisited the Montana Board's website to confirm that the relevant rules remained unchanged. After re-reviewing the same provisions, he remained satisfied

9

Doc ID: e938cf41e00d173d999713246c7391c5e2ed83e7

that his conduct was ethically permissible. Only after these multiple layers of review, personal examination of the governing rules, consultation with a qualified professional, and subsequent confirmation of the rules immediately before the marriage, did Plaintiff proceed. The parties ultimately married on February 12, 2021.

16.    During the marriage, Defendant's conduct toward Plaintiff included physical aggression and threats: Defendant struck Plaintiff on multiple occasions, chased him around the house several times, threatened him with a knife on one occasion, and threw objects at him at various times between March 19, 2021 and October 20, 2023. A pivotal point occurred in a marital dispute that began when Defendant and Plaintiff had an argument over a comment Plaintiff made about an actress in a movie he was watching. Based upon this argument and Defendant's distortion of what Plaintiff said and what his motivations were, Defendant's therapist diagnosed Plaintiff, without ever meeting with him, as having narcissistic personality disorder (NPD). Defendant began exhibiting signs of paranoia and the parties' marriage suddenly and unexpectedly deteriorated to the point of Defendant threatening to destroy Plaintiff and asking for a divorce.

17.    Defendant repeatedly threatened Plaintiff by stating, "I'll ruin you! I'll destroy you!" After mid-February 2025, those threats were tied to demands that Plaintiff give Defendant money ("I want the money now!"), release or transfer joint

10

and tithe-account funds for her personal spending, support "her dreams," and make false admissions about the parties' former therapeutic relationship.

18.     The false admissions Defendant demanded included assertions, among other things, that Plaintiff groomed her, acted predatorily, committed ethical violations, and engaged in financial misconduct.

19.     When Plaintiff did not comply, Defendant followed through by threatening and then making false reports to licensing boards, pastors, churches, Christian radio stations, prayer networks, The Vine Network, and others, accusing Plaintiff of professional misconduct, predatory behavior, pornography addiction, financial abuse, money laundering, and sex-trafficking connections.

20.     Plaintiff and Defendant are now divorcing, but the dispute did not remain private: Defendant used the divorce and related financial conflict as a platform to attack Plaintiff's professional identity, religious standing, counseling practice, licenses, military work, and VA-related work.

21.     The stakes were especially severe because Plaintiff's ability to earn a living and serve clients depends on professional licenses in multiple states, an active counseling practice, clinical-supervision relationships, ordination through The Vine Network, and religious endorsements necessary for military and VA work.

11

Doc ID: e938cf41e00d173d999713246c7391c5e2ed83e7

**Defendant's Defamatory Statements to Churches, Religious Counselors, Prayer Networks, and Christian Media Outlets**

22.    Defendant first used religious channels to broaden the attack, contacting churches, pastors, religious counselors, prayer networks, and Christian media outlets throughout the country under the guise of "prayer requests" about Plaintiff. Upon information and belief, Defendant spread false allegations that Plaintiff is a narcissist, a pornography addict who was doing live porn in the basement with a woman, a predator who groomed her, a manipulator who exploited her as a former client, and a counselor and pastor who should not be permitted to serve others. Defendant used enough identifying information for recipients to understand that the accusations concerned Plaintiff. Defendant admitted in text messages to Plaintiff that she was doing this:

12

Doc ID: e938cf41e00d173d999713246c7391c5e2ed83e7

23.    Defendant also contacted Plaintiff's home church in Helena, Montana and Haniford Bible Church. She then told Plaintiff she was going to "email TONS more churches today across the USA."

I'm going to email TONS more churches today across the USA. 11:43

24.    Defendant made the accusations to Pastor Tyler Long of Little Union Church near Craigsville, West Virginia, or his wife, or both, then invoked that contact in text messages to Plaintiff dated February 13, 2025, and April 4, 2025, stating, "Call Little Union" and, "Just as I thought! Little union sure doesn't agree with your behavior!!!"

Call Little Union! 12:06

Call Little Union! 12:06

Just as I thought! Little union sure doesn't agree with your behavior!!! 11:56

They know about your counseling too! It's not in my head that it's bad 11:58

25.    Defendant likewise contacted the Southern California Network of the Assemblies of God and a local Assemblies of God church in Helena, Montana after Defendant warned Plaintiff by text that she intended to do so. One denominational leader, Brandon Doss, later confirmed to Plaintiff that Defendant had contacted him.

13

Doc ID: e938cf41e00d173d999713246c7391c5e2ed83e7

26.     Defendant further contacted other professional, religious, and prayer counselors and repeated the same false statements.

27.     Defendant also contacted a therapist employed by Plaintiff's counseling business, Emmaus, and attempted to persuade her that, because Defendant was complaining to Plaintiff's superiors, Plaintiff was unsafe, professionally compromised, and someone from whom she should separate as soon as possible, thereby disrupting Plaintiff's clinical-supervision relationship.

28.     Defendant contacted Plaintiff's personal therapist, falsely accused Plaintiff of narcissism, gaslighting, and emotional abuse, and attempted to induce the therapist to diagnose Plaintiff with narcissistic personality disorder; when the therapist refused, Defendant filed a licensing complaint in Montana against him.

29.     Defendant also told Plaintiff on April 15, 2025, that she intended that very day to contact the National Association of Evangelicals ("NAE"), the organization responsible for Plaintiffs' endorsement—without which he cannot practice as a chaplain. She threatened to tell them Plaintiff was "abusive" toward her, which is false. Plaintiff followed through on that threat.

30.     In late April 2025, Defendant told Plaintiff that she had also conveyed these same false statements to her family members.

14

**Defendant's False Complaints to State Licensing Boards**

31.     Defendant escalated the campaign to licensing authorities by contacting the counseling boards of Montana, Wyoming, and West Virginia, where she repeated the same false professional-misconduct accusations.

32.     Defendant filed false written complaints with the Montana, Wyoming, and West Virginia counseling boards concerning five of Plaintiff's professional licenses: Licensed Marriage and Family Therapist and Licensed Clinical Professional Counselor in Montana, Licensed Marriage and Family Therapist and Licensed Professional Counselor in West Virginia, and Licensed Marriage and Family Therapist in Wyoming.

33.     Defendant's May 20, 2025 complaint to the MBBH also suggested that Defendant had contacted or intended to contact someone associated with Veterans Affairs, another source of Plaintiff's professional work. This contact was later confirmed in her post on social media platform X (*see* below).

34.     On October 16, 2025, the Screening Panel of the MBBH met and considered Defendant's complaints against Plaintiff and Plaintiff's counselor. After considering the complaints, the responses to the complaints, and the staff's investigation, the Screening Panel voted to dismiss the complaints and closed them. The Board meeting was held over Zoom, and Plaintiff and Defendant were both

Doc ID: e938cf41e00d173d999713246c7391c5e2ed83e7

present. When Defendant heard that the Board was dismissing her complaints, she held up a sign that said, "I'm going to the media!"

36. Defendant's false complaint to the West Virginia Board is still pending, and Plaintiff voluntarily surrendered his license in Wyoming because he no longer needed it and there was therefore no need to spend time and resources defending himself in that venue.

**Defendant's Defamatory Statements to Plaintiff's Employers and Ordination Official and Endorser**

36. Defendant also told three pastors and The Vine Network that Plaintiff was under investigation in three states, had engaged in questionable financial activity, had associations with persons reportedly under federal scrutiny, and had patterns suggesting deeper misconduct potentially linked to money laundering or sex-trafficking connections.

37. Specifically, on or about August 1, 2025, Plaintiff learned of an email Defendant had sent to Brandon Doss, lead minister of The Vine Network, the Christian denomination through which Plaintiff is ordained. The email accused Plaintiff of "questionable financial activity," "associations with persons reportedly under federal scrutiny," "money laundering," and "sex trafficking connections." Defendant admitted in the email that she had also contacted "[t]hree pastors" about these false allegations:

16

Doc ID: e938cf41e00d173d999713246c7391c5e2ed83e7

---- On Wed, 16 Jul 2025 20:16:14 -0700 **Cindy Lea** <cindy[REDACTED]com> wrote ---

Dear Vine,

I'm reaching out with concern regarding one of your ordained pastors. I've known of troubling behavior involving this individual, including questionable financial activity, associations with persons reportedly under federal scrutiny, and patterns that may suggest deeper misconduct — potentially linked to money laundering and/or sex trafficking connections.

This individual is currently under investigation in three states.

There are also concerns about possible abuse of individuals who sought support or guidance from him in his role. Three pastors, independently, have encouraged me to contact your organization, given that you hold this individual's ordination. I share this out of a sense of responsibility and concern for the integrity of your network.

38.    In or about July or August 2025, Defendant contacted Plaintiff's religious Endorser, Steve West, whose endorsement affects Plaintiff's ability to work as a chaplain in the military and with the VA, and repeated the same accusations she had circulated to others.

39.    Steve West later conveyed to Plaintiff that Defendant also spoke with Brandon Doss and repeated the same accusations; Brandon Doss confirmed the contact and told Plaintiff his ordination was at risk. Steve West later informed Plaintiff that The Vine Board was taking away Plaintiff's ordination.

40.    In or about August 2025, Defendant contacted leadership at the Wyoming Air National Guard, one of Plaintiff's employers, and made confidential accusations that triggered a Commander Directed Investigation, which ultimately resulted in a finding of "not substantiated."

17

Doc ID: e938cf41e00d173d999713246c7391c5e2ed83e7

**Defendant's Defamatory Statements to a Montana Legislative Committee and a Task Force**

41.    In March and April of 2026, Defendant made further libelous and slanderous statements about Plaintiff before a Montana legislative committee and a task force and uploaded documents to those entities' websites, all of which were and continue to be publicly available, under the guise of proposing legislative reform.

42.    Specifically, on March 9, 2026, Defendant submitted to the Montana Economic Affairs Interim Committee ("EAIC") a document titled, "Cindy Patterson Written Public Comment" in which she stated that her "treating therapist filed a complaint [before the Montana BBH] citing manipulation, gaslighting, and exploitation" against Plaintiff. Defendant asked the committee to "propose legislation to ban therapist-client marriages and require reciprocal discipline."

43.    Defendant then uploaded seven documents to the EAIC's website that are publicly available and contain libelous statements, including:

  a.    "[Plaintiff's] PhD-level ally counseled us both, which appeared to create a dual relationship under ARM 24.219.2301(2)(b)(vii) that impaired his objectivity and obscured my abuse."

  b.    "[Defendant's] treating therapist was so alarmed she filed a complaint documenting manipulation, gaslighting, and exploitation."

18

Doc ID: e938cf41e00d173d999713246c7391c5e2ed83e7

c.      "[T]he relationship has been full of manipulation and gaslighting."

d.      "[H]e [Plaintiff] cut her [Defendant] off financially, preventing her from leaving."

e.      Plaintiff "took advantage of [Defendant's] vulnerability by pursuing her for an intimate relationship and has unethical practices."

44.    Moreover, Defendant published a confidential letter from the Wyoming Mental Health Professions Licensing Board (the "Wyoming Board") addressed to Plaintiff that repeats the false allegations Defendant made before the Wyoming Board, including, "[Defendant] alleges manipulation and other aspects of vulnerability learned about during [Plaintiff's] client/counselor relationship used in the marriage . . . ."

45.    Defendant also published Plaintiff's confidential response to a false complaint Defendant filed with the State of West Virginia Board of Examiners in Counseling.

46.    On March 10, 2026, Defendant appeared by Zoom at the EAIC meeting and publicly commented, under the guise of requesting legislative reform, making the following slanderous statements:

a.      Plaintiff's "possible mental unfitness;"

19

Doc ID: e938cf41e00d173d999713246c7391c5e2ed83e7

b. Plaintiff's "Ph.D. colleague ignored dual relationship rules to counsel us both, fostering further bias and exploitation;"

c. the "relationship's predatory nature;" and

d. "my treating therapist filed a complaint with the Board documenting manipulation, exploitation and gaslighting."

47. After Defendant's comments, Senator Mark Noland, the Acting Presiding Officer, commented, "You're probably aware of, um, the process that can happen, and one of those processes is you find a legislator that can address this. If you're asking for a committee bill, um, you can sure do that, but we have to have somebody to take that up."

48. Defendant published these libelous and slanderous statements out of malice and with intent to injure Plaintiff under the guise of seeking legislative or regulatory reform. The EAIC was not sitting as a licensing, disciplinary, or adjudicatory body, and it was not charged with determining the truth of Defendant's accusations against Plaintiff or adjudicating any complaint concerning Plaintiff's professional conduct. Defendant's accusations about Plaintiff were not necessary to, germane to, nor materially connected with any matter properly before the EAIC. Senator Noland's comments to Defendant confirmed this. Defendant appeared voluntarily and used the public-comment process to publish false personal accusations about Plaintiff that exceeded any legitimate legislative purpose.

20

Doc ID: e938cf41e00d173d999713246c7391c5e2ed83e7

49.    Then on April 15, 2026, Defendant submitted to the Montana Licensing Reform Task Force a public comment and a public link to a Google drive holding seven documents which contain defamatory statements about Plaintiff.

50.    The Montana Licensing Reform Task Force was created pursuant to Executive Order 1-2026 on January 29, 2026. That Executive Order formed the Montana Licensing Reform Task Force to "provide the Governor with recommendations and strategies for the State of Montana to reform the professional occupational licensing system for the purposes of: identifying and removing burdens and barriers faced by licensees that are not necessary to protect the public; and improving access to and availability of professional services for citizens across Montana, including rural communities."

51.    Defendant's public comment with the Montana Licensing Reform Task Force had nothing to do with these purposes. Nevertheless, Defendant used the opportunity to submit a public comment to publish more libelous statements about Plaintiff. Defendant's public comment stated that her circumstances of marrying Plaintiff "met multiple exploitation factors," falsely accused Plaintiff's therapist of shap[ing] the conditions for the exploitation" and providing "concurrent individual counseling" to her and Plaintiff which was an "unethical dual relationship" obscuring her "abuse" by Plaintiff, which was all false. In the comment she referred to Plaintiff as her "spouse" such that the reader could determine she was referring to

21

Doc ID: e938cf41e00d173d999713246c7391c5e2ed83e7

Plaintiff. She also uploaded documents that contained further libelous statements about Plaintiff and identified him by name. She also accused Plaintiff of "mental instability." She then included within the comment a link to the seven documents, describing the link as follows: "Supporting documents are provided through the secure link below. The files are set to 'anyone with the link can view' so staff can download and print them for the April 13 meeting packet."

52.   The "supporting documents" that Defendant published on the internet and that were and are publicly available contain libelous statements such as:

a.   "[T]he relationship has been full of manipulation and gaslighting."

b.   "[H]e [Plaintiff] cut her [Defendant] off financially, preventing her from leaving."

c.   Plaintiff "took advantage of [Defendant's] vulnerability by pursuing her for an intimate relationship and has unethical practices."

53.   Moreover, Defendant again published a confidential letter from the Wyoming Board addressed to Plaintiff that repeats the false allegations Defendant made before the Wyoming Board, including, "[Defendant] alleges manipulation and other aspects of vulnerability learned about during [Plaintiff's] client/counselor relationship used in the marriage . . . ."

22

Doc ID: e938cf41e00d173d999713246c7391c5e2ed83e7

**Defendant's Defamatory Statements on X**

54.    Defendant has a profile on social media platform X (formerly known as Twitter) called, "Stand With Cindy Lea" and has thousands of followers.

55.    On May 20, 2026, Defendant posted on X: "Professionals told me he [Plaintiff] groomed me" and they "believe I'm not his only victim." Defendant also falsely stated that "Wyoming revoked [Plaintiff's] license." Defendant also warned that her "story" would be "coming." She also posted, "Oh! Should I add he's a clinical Chaplain for the Veteran's Affairs and Air National Guard? Yeah, they're hung up on the fact that I'm not a veteran. He's a communal narcissist who also runs a 'Christian' counseling practice. There's SO much more to my story."



23

Doc ID: e938cf41e00d173d999713246c7391c5e2ed83e7

56.    Then again on July 2, 2026, Defendant posted on X: "I was groomed and abused by my therapist—a VA chaplain—and later married him. Wyoming revoked his license . . . . Will share story soon."



57.    Defendant's posts not only contain libelous statements but admit Defendant contacted the VA and the Air National Guard regarding Plaintiff, and the statements threaten further injury to Plaintiff.

58.    Defendant's libelous publications and slanderous statements caused concrete professional harm and risk, including the loss or transfer of at least one counseling client, disruption of clinical-supervision relationships, licensing-board exposure across multiple states, a Wyoming Air National Guard investigation, risk to Plaintiff's religious endorsements, and the potential loss of Plaintiff's ordination

24

Doc ID: e938cf41e00d173d999713246c7391c5e2ed83e7

through The Vine Network. Plaintiff also suffered and continues to suffer emotional distress and, as a result, a decreased ability to counsel clients.

## CLAIMS FOR RELIEF

### Count I: Libel

59. Plaintiff repeats paragraphs 1 through 58.

60. Mont. Code Ann. § 27-1-801 provides, "Defamation is effected by: (1) libel; (2) slander."

61. Libel is defined by Mont. Code Ann. § 27-1-802 as "a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation that exposes any person to hatred, contempt, ridicule, or obloquy or causes a person to be shunned or avoided or that has a tendency to injure a person in the person's occupation."

62. Defendant published to third parties the unprivileged libelous statements alleged herein that were either explicitly defamatory or were defamatory in the context in which they were made, including:

a. Statements accusing Plaintiff of "questionable financial activity . . . potentially linked to money laundering," "associations with persons . . . under federal scrutiny," and "sex trafficking connections;"

b. Statements about Plaintiff's "manipulation, gaslighting, and exploitation" of Defendant;

25

Doc ID: e938cf41e00d173d999713246c7391c5e2ed83e7

  c.  "[Plaintiff's] PhD-level ally counseled us both, which appeared to create a dual relationship under ARM 24.219.2301(2)(b)(vii) that impaired his objectivity and obscured my abuse;"

  d.  "[Defendant's] treating therapist was so alarmed she filed a complaint documenting manipulation, gaslighting, and exploitation;"

  e.  "[T]he relationship has been full of manipulation and gaslighting;"

  f.  "[H]e [Plaintiff] cut her [Defendant] off financially, preventing her from leaving;"

  g.  Plaintiff "took advantage of [Defendant's] vulnerability by pursuing her for an intimate relationship and has unethical practices;"

  h.  Plaintiff "groomed" Defendant;

  i.  Plaintiff "abused" Defendant;

  j.  Defendant is not Plaintiff's only "victim;"

  k.  "Wyoming revoked [Plaintiff's] license;" and

  l.  Plaintiff is "a communal narcissist."

63. These false and defamatory statements are of and concerning Plaintiff; in each instance Defendant either named Plaintiff explicitly or referred to him as "my husband." Moreover, Defendant intended to refer to Plaintiff in these

Doc ID: e938cf41e00d173d999713246c7391c5e2ed83e7

statements, and Plaintiff and listeners of these statements understood them to be about Plaintiff.

64.    These statements, which communicate to an average reader that Plaintiff is engaging in questionable or illegal financial activity potentially linked to money laundering; has associations with persons under federal scrutiny; has sex trafficking connections; engaged in manipulation, gaslighting, and exploitation of Defendant; abused Defendant; cut Defendant off financially, preventing her from leaving; took advantage of Defendant's vulnerability by pursuing her for an intimate relationship; and has unethical practices, are false and defamatory, exposed Plaintiff to hatred, contempt, ridicule, or obloquy, caused Plaintiff to be shunned or avoided, and have a tendency to injure Plaintiff's occupation.

65.    The injury to Plaintiff's reputation from Defendant's statements is readily apparent. Such statements tend to disgrace and degrade the reputation of another and would cause him to be shunned and avoided by the community. Further, the Court can presume as a matter of law, without extrinsic evidence, that these statements will tend to disgrace or degrade the Plaintiff or cause him to be shunned and avoided. As such, Defendant's statements are defamatory *per se*.

66.    By publishing these false and defamatory statements, Defendant caused harm to Plaintiff's reputation.

27

Doc ID: e938cf41e00d173d999713246c7391c5e2ed83e7

67. At the time of these false and defamatory statements, Defendant knew that her statements were false.

68. As a direct and proximate result of these false and defamatory statements by Defendant, Plaintiff has suffered damages, including *inter alia*, injury to his reputation, loss of clientele, harm to his ability to carry on his profession, embarrassment, humiliation, and emotional distress, in an amount to be determined at trial.

69. Defendant's actions were negligent, malicious, willful and wanton, and evidenced a conscious disregard for Plaintiff's rights. Plaintiff is therefore entitled to punitive damages.

**Count II: Slander**

70. Plaintiff repeats paragraphs 1 through 58.

71. Mont. Code Ann. § 27-1-801 provides, "Defamation is effected by: (1) libel; (2) slander."

72. "Slander is a false and unprivileged publication other than libel that: (1) charges any person with crime or with having been indicted, convicted, or punished for crime; (2) imputes in a person the present existence of an infectious, contagious, or loathsome disease; (3) tends directly to injure a person in respect to the person's office, profession, trade, or business, either by imputing to the person general disqualification in those respects that the office or other occupation

28

Doc ID: e938cf41e00d173d999713246c7391c5e2ed83e7

peculiarly requires or by imputing something with reference to the person's office, profession, trade, or business that has a natural tendency to lessen its profit; (4) imputes to a person impotence or want of chastity; or (5) by natural consequence causes actual damage." Mont. Code Ann. § 27-1-803.

73.    Defendant published to third parties the unprivileged slanderous statements alleged herein that were either explicitly defamatory or were defamatory in the context in which they were made, including statements that Plaintiff was a narcissist, a predator who groomed Defendant as a former client, engaged in pornography-related misconduct, and should not be permitted to counsel or pastor anyone. Plaintiff also specifically made statements about/that:

a.    Plaintiff's "possible mental unfitness;"

b.    Plaintiff's "Ph.D. colleague ignored dual relationship rules to counsel us both, fostering further bias and exploitation;"

c.    their "relationship's predatory nature;" and

d.    "my treating therapist filed a complaint with the Board documenting manipulation, exploitation and gaslighting."

74.    These false and defamatory statements are of and concerning Plaintiff; in each instance Defendant either named Plaintiff explicitly, referred to him as "my husband," or included enough descriptors such that the recipient could reasonably identify Plaintiff as the subject of the statements. Moreover, Defendant intended to

29

Doc ID: e938cf41e00d173d999713246c7391c5e2ed83e7

refer to Plaintiff in these statements, and Plaintiff and recipients of these statements understood them to be about Plaintiff.

75.    Defendant published to third parties the unprivileged libelous statements alleged herein that were either explicitly defamatory or were defamatory in the context in which they were made, including statements that Plaintiff was a narcissist, a predator who groomed her as a former client, engaged in pornography-related misconduct, and should not be permitted to counsel or pastor anyone.

76.    These statements, which communicate to an average listener that Plaintiff is a narcissist, a predator who groomed Defendant as a former client, engaged in pornography-related misconduct, and should not be permitted to counsel or pastor anyone, are false and defamatory, exposed Plaintiff to hatred, contempt, ridicule, or obloquy, caused Plaintiff to be shunned or avoided, and have a tendency to injure Plaintiff's occupation.

77.    The injury to Plaintiff's reputation from Defendant's statements is readily apparent. Such statements tend to disgrace and degrade the reputation of another and would cause him to be shunned and avoided by the community. Further, the Court can presume as a matter of law, without extrinsic evidence, that these statements will tend to disgrace or degrade the Plaintiff or cause him to be shunned and avoided. As such, Defendant's statements are defamatory *per se*.

30

Doc ID: e938cf41e00d173d999713246c7391c5e2ed83e7

78. By publishing these false and defamatory statements, Defendant caused harm to Plaintiff's reputation.

79. At the time of these false and defamatory statements, Defendant knew that her statements were false.

80. As a direct and proximate result of these false and defamatory statements by Defendant, Plaintiff has suffered damages, including *inter alia*, injury to his reputation, loss of clientele, harm to his ability to carry on his profession, embarrassment, humiliation, and emotional distress, in an amount to be determined at trial.

81. Defendant's actions were negligent, malicious, willful and wanton, and evidenced a conscious disregard for Plaintiff's rights. Plaintiff is therefore entitled to punitive damages.

## **REQUEST FOR INJUNCTIVE RELIEF**

82. Plaintiff seeks a temporary restraining order and preliminary injunction under Rule 65 of the Federal Rules of Civil Procedure to:

   a. Prohibit Defendant from publishing or republishing the false statements identified herein;

   b. Prohibit Defendant from making any further false statements about Plaintiff's character, business, or conduct; and

Doc ID: e938cf41e00d173d999713246c7391c5e2ed83e7

c.      Require Defendant to remove her false statements about Plaintiff from the internet.

83.     Plaintiff has no adequate remedy at law because monetary damages cannot fully repair the existing and ongoing harm to reputation.

84.     Plaintiff satisfies the federal four-factor test for injunctive relief:

a.      **Likelihood of success on the merits**: The statements are demonstrably false and defamatory.

b.      **Irreparable harm**: Continued publication causes ongoing reputational damage.

c.      **Balance of the equities**: The harm to Plaintiff outweighs any burden on Defendant.

d.      **Public interest**: Preventing the spread of false information serves the public good.

*Flexible Lifeline Sys. Inc. v. Precision Lift Inc.*, 654 F.3d 989 (9th Cir. 2011).

85.     Upon final judgment in Plaintiff's favor, Plaintiff requests that the Court enter a permanent injunction prohibiting Defendant from publishing or republishing the specific statements adjudicated false in this action and requiring her to remove the false statements from the internet.

86.     Plaintiff has suffered and will continue to suffer irreparable harm to reputation and business goodwill if Defendant is not permanently enjoined.

32

Doc ID: e938cf41e00d173d999713246c7391c5e2ed83e7

87. Monetary damages alone are inadequate to remedy the ongoing harm.

88. The balance of hardships favors Plaintiff, and the public interest supports preventing the continued dissemination of false and defamatory statements.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court:

a. Award Plaintiff damages, including any presumed, actual, and/or compensatory damages, in an amount greater than $75,000 or in such amount as proven at trial;

b. Award Plaintiff punitive damages;

c. Issue a temporary restraining order and preliminary injunction as described above;

d. Award Plaintiff his costs of suit, including attorneys' fees arising from this action, including any appeals;

e. Upon final judgment, issue a permanent injunction as described above; and

f. Award Plaintiff such other and further relief as may be just and appropriate.

Doc ID: e938cf41e00d173d999713246c7391c5e2ed83e7

RESPECTFULLY SUBMITTED this 10th day of July, 2026.


                                    /s/ Gregory A. McDonnell
                                    GREGORY A. MCDONNELL
                                    **ORR MCDONNELL LAW, PLLC**
                                    627 Woody Street
                                    Missoula, MT 59802
                                    Telephone: (406) 543-0999
                                    Facsimile:   (406) 552-0560
                                    greg@omlmt.com
                                    katie@omlmt.com


                                    RACHELE R. BYRD*
                                    **WOLF HALDENSTEIN ADLER
                                    FREEMAN & HERZ LLP**
                                    750 B Street, Suite 1820
                                    San Diego, CA  92101
                                    Telephone:  (619) 239-4599
                                    Facsimile:   (619) 234-4599
                                    byrd@whafh.com
                                    *pro hac vice forthcoming

34

Doc ID: e938cf41e00d173d999713246c7391c5e2ed83e7

## JURY DEMAND

Plaintiff hereby demands a trial by Jury on all matters for which a Jury trial is permitted or allowed under applicable law.

RESPECTFULLY SUBMITTED this 10th day of July, 2026.

/s/ Gregory A. McDonnell
GREGORY A. MCDONNELL
**ORR MCDONNELL LAW, PLLC**
627 Woody Street
Missoula, MT 59802
Telephone: (406) 543-0999
Facsimile:   (406) 552-0560
greg@omlmt.com
katie@omlmt.com

RACHELE R. BYRD*
**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**
750 B Street, Suite 1820
San Diego, CA  92101
Telephone:  (619) 239-4599
Facsimile:   (619) 234-4599
byrd@whafh.com
*pro hac vice forthcoming

35

## VERIFICATION BY JAMES PATTERSON

I, James Patterson, declare as follows:

1.      I am the Plaintiff in this matter.

2.      I have reviewed the attached Complaint and declare that the allegations contained therein are true to the best of my knowledge.

I declare under penalty of perjury under the laws of the United States of America that the statements contained in this Verification are true and correct.


Executed on July 10th, 2026, in Helena, Montana.


*James V. Patterson*

JAMES PATTERSON

36

**✖ Dropbox Sign**                                                    Audit trail

| | |
|---|---|
| Title | 2026-07-10 Complaint (FINAL).pdf |
| File name | 2026-07-10%20Complaint%20%28FINAL%29.pdf |
| Document ID | e938cf41e00d173d999713246c7391c5e2ed83e7 |
| Audit trail date format | MM / DD / YYYY |
| Status | ● Signed |

This document was requested from app.clio.com

## Document History

**SENT**
07 / 10 / 2026
17:30:14 UTC
Sent for signature to James Patterson (chjamespatterson@gmail.com) by services@clio.com acting on behalf of katie@omlmt.com
IP: 135.135.24.206

**VIEWED**
07 / 10 / 2026
17:35:28 UTC
Viewed by James Patterson (chjamespatterson@gmail.com)
IP: 174.220.158.200

**SIGNED**
07 / 10 / 2026
17:35:51 UTC
Signed by James Patterson (chjamespatterson@gmail.com)
IP: 174.220.158.200

**COMPLETED**
07 / 10 / 2026
17:35:51 UTC
The document has been completed.

Powered by ✖ Dropbox Sign