GREGORY A. MCDONNELL
**ORR MCDONNELL LAW, PLLC**
627 Woody Street
Missoula, MT 59802
Telephone: (406) 543-0999
Facsimile:  (406) 552-0560
greg@omlmt.com
katie@omlmt.com

RACHELE R. BYRD (*pro hac vice*)
**WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLP**
750 B Street, Suite 1820
San Diego, CA  92101
Telephone:  (619) 239-4599
Facsimile:   (619) 234-4599
byrd@whafh.com

*Attorneys for Plaintiff James Patterson*

**UNITED STATES DISTRICT COURT
DISTRICT OF MONTANA
HELENA DIVISION**

| | |
|---|---|
| JAMES PATTERSON,<br><br>      *Plaintiff,*<br><br>v.<br><br>CINDY PATTERSON,<br><br>      *Defendant.* | Case No. 6:26-cv-00048-JTJ<br><br>**PLAINTIFF JAMES PATTERSON'S APPLICATION FOR A TEMPORARY RESTRAINING ORDER** |

1

Plaintiff James Patterson ("Plaintiff"), by and through his attorneys, Gregory A. McDonnell of Orr McDonnell Law, PLLC and Rachele R. Byrd of Wolf Haldenstein Adler Freeman & Herz LLP, pursuant to Federal Rule of Civil Procedure 65(b), submits this Application for a Temporary Restraining Order ("TRO") and requests the Court to temporarily restrain Defendant Cindy Patterson ("Defendant") from publishing to any third party any further defamatory statements regarding Plaintiff and requiring her to remove from the internet the defamatory statements she posted about Plaintiff. Due to the fact that immediate and irreparable injury, loss, and damage will result to Plaintiff, Plaintiff respectfully requests that the TRO be issued without delay and for the maximum period allowed. Plaintiff will file his Motion for Preliminary Injunction and supporting Memorandum prior to expiration of the TRO, requesting relief to prevent further injury or irreparable harm by preserving the status quo of the subject in controversy until a hearing can be held.

## BACKGROUND

1.      Plaintiff filed his Verified Complaint for: (1) Libel; (2) Slander; and (3) Injunctive Relief (the "Complaint") on July 10, 2026. Plaintiff is a longtime clinician, chaplain, ordained minister, military officer, VA chaplain, and owner of Emmaus Counseling Services of Montana. Compl. ¶¶ 2, 4. As stated in the Complaint, Plaintiff and Defendant are married but divorcing, and Defendant is attempting to "destroy" Plaintiff by publishing defamatory statements accusing

2

Plaintiff of "questionable financial activity . . . potentially linked to money laundering," "associations with persons . . . under federal scrutiny," and "sex trafficking connections;" defamatory statements about Plaintiff's "manipulation, gaslighting, and exploitation" of Defendant; defamatory allegations of grooming and abuse, and that Plaintiff is a "communal narcissist;" and defamatory statements that Plaintiff is possibly "mental[ly] unfit[]" and a predator, among other things. *Id.* ¶¶ 3, 36-37, 42, 46, 51, 55, 62, 73.

2.    Defendant published these defamatory statements to churches, pastors, prayer networks, Christian media outlets, counseling clients and professionals, licensing boards, Plaintiff's ordination sponsor and religious endorser, military leadership, Montana public bodies, and social media. *Id.* ¶¶ 22-58. Defendant has targeted her defamatory statements about Plaintiff to the very relationships, licenses, endorsements, and institutions on which Plaintiff's livelihood depends as well as social media platform X (formerly known as Twitter), where she has thousands of followers. *Id.* Defendant's posts as recently as July 2, 2026 on X (formerly Twitter) declare: "There's SO much more to my story," and, "Will share story soon." *Id.* ¶¶ 55-56. These statements demonstrate Defendant's intent to continue posting defamatory statements about Plaintiff.

3.    As a result of Defendant's defamatory publications, Defendant has already suffered concrete harm, including loss of a counseling client, disruption of

clinical-supervision relationships, multi-state licensing exposure, a Wyoming Air National Guard investigation, risk to Plaintiff's religious endorsements, the potential loss of his ordination through The Vine Network, and emotional distress. *Id*. ¶¶ 3, 68.

4.      If Defendant is allowed to continue to publish defamatory statements about Plaintiff, Plaintiff will suffer further irreparable harm. Plaintiff therefore requests this Court enjoin Defendant from publishing further defamatory statements about Plaintiff and that she be required to delete and remove defamatory statements she posted on the internet, including: (1) the three comments she posted on X on May 20, 2026 and July 2, 2026 regarding Plaintiff;  and (2) the Google drive containing defamatory statements about Plaintiff, the link to which Defendant included in a public comment to the Montana Licensing Reform Task Force.[1] Compl. ¶¶ 49, 55-57.

5.      In support of this Application, Plaintiff filed the verified Complaint and files herewith the Declaration of Rachele R. Byrd in Support of Plaintiff's Motion for a Temporary Restraining Order ("Byrd Declaration").

6.      Given the ongoing irreparable nature of the harm and imminent threat to Plaintiff's career, business, and reputational interests, notice is not required

---

[1] *See* https://drive.google.com/drive/folders/1dqOXuKH4NUiVcNqj1y6DJ5o9eTddoAmT?usp=sharing.

pursuant to Fed. R. Civ. P. 65(b)(1). However, Plaintiff is causing Defendant to be personally served with a copy of this Application for a Temporary Restraining Order with the Summons and the Complaint. *See* Byrd Declaration ¶ 5.

## ARGUMENT

Federal Rule of Civil Procedure 65 authorizes district courts to issue a temporary restraining order without written or oral notice to the adverse party where (1) "specific facts . . . clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition," and (2) "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1)(A), (B). The standards for issuing a temporary restraining order and a preliminary injunction are the same. *See, e.g., Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see also Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 738 (9th Cir. 2014) (citing *Winter*, 555 U.S. at 20) (preliminary injunction appropriate where a plaintiff has shown "that (1) it is likely to succeed on the merits, (2) it is likely to

suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in its favor, and (4) an injunction is in the public interest."). The Ninth Circuit takes a "sliding scale" approach to these factors, according to which "'a stronger showing of one element may offset a weaker showing of another.'" *hiQ Labs, Inc. v. LinkedIn Corp*., 31 F.4th 1180, 1188 (9th Cir. 2022) (quoting *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011)). "[W]hen the balance of hardships tips sharply in the plaintiff's favor, the plaintiff need demonstrate only 'serious questions going to the merits.'" *Id*.; *see also BNI Enterprises, Inc. v. Referral Leaders Int'l, LLC*, No. EDCV14-02097-VAP (KKx), 2015 WL 12644984, at *2 (C.D. Cal. Jan. 9, 2015) ("Alternately, the party may show 'serious questions going to the merits' (rather than a likelihood of success on the merits) and still obtain an injunction or order if the 'balance of hardships tips sharply' in its favor 'and the other two Winter factors are satisfied.'" (quoting *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014))). Plaintiff can satisfy each factor and the balance more than tips in his favor.

A temporary restraining order is appropriate here because: (1) Plaintiff is likely to succeed on the merits of his claim that Defendant publicly communicated defamatory statements about Plaintiff, or that his Complaint at a minimum raises serious questions going to the merits; (2) Plaintiff will suffer irreparable harm consisting of reputational harm, damage to his career, and loss of future business if

the Court does not restrain and enjoin Defendant from publishing further defamatory statements and require her to remove from the Internet the defamatory statements she has already posted there; (3) the equities weigh sharply in Plaintiff's favor as Defendant retains no privilege to engage in her false and disparaging smear campaign against Plaintiff; and (4) preventing the publication of defamatory statements serves the public interest.

## I.    Plaintiff Has Demonstrated a Likelihood of Success on the Merits

Plaintiff filed his Complaint for defamation against Defendant on July 10, 2026. Dkt. No. 1. Plaintiff brings causes of action against Defendant for libel and slander. Compl. ¶¶ 59-81. Federal courts sitting in diversity apply state substantive law. *Miller v. Sawant*, 18 F.4th 328, 337 (9th Cir. 2021). Montana's defamation law is governed by statute. *Lee v. Traxler*, 385 Mont. 354, 358 (2016). Defamation may occur through either libel or slander. Mont. Code Ann. § 27-1-801. Whether by libel or slander, the pertinent essence of tortious defamation "is a false and unprivileged publication" about another that causes the person to suffer damages. Sections 27-1-801 through 803; *see also* Compl. ¶¶ 61, 72.

Where a statement is false, unprivileged, and defamatory on its face (i.e., the insult is obvious), the statement is defamatory *per se* and Montana law presumes general damages. *Gallagher v. Johnson*, 188 Mont. 117, 122 (1980). Defendant's defamatory campaign constitutes libel *per se* and slander *per se*.

Defendant published—and continues to publish—false statements about Plaintiff to his employers, on social media, and elsewhere on the Internet. On their face, Defendant's fabricated allegations directly impugn and aim to harm Plaintiff, his career, and his reputation. Any reasonable reader would understand that Defendant is accusing Plaintiff of: questionable or illegal financial activity potentially linked to money laundering; having associations with persons under federal scrutiny; having sex trafficking connections; having engaged in manipulation, gaslighting, and exploitation of Defendant; having abused Defendant; having unethical practices; being a narcissist; being a predator; and engaging in pornography-related misconduct, among other things, without the need for additional information, explanation, innuendo, or other extrinsic fact, rendering the statements libelous and slanderous *per se*. Compl. ¶¶ 63, 65, 73, 76. And Defendant enjoys no privilege to make knowingly false statements about Plaintiff. Defendant's statements were made with malice, intent, and reckless disregard for the truth. *Id*. ¶¶ 48, 67, 69, 81. Plaintiff is therefore likely to succeed on the merits.

## II.    Absent an Injunction, Plaintiff Will Suffer Irreparable Harm

Plaintiff has suffered and will continue to suffer irreparable harm if Defendant's misstatements are not taken down immediately and the Court does not enjoin her from making further defamatory statements. *See Regents of Univ. of Cal. v. Am. Broad. Cos., Inc.*, 747 F.2d 511, 520 (9th Cir. 1984) (recognizing irreparable

injury may take the form of damage to reputation); *St. Ives Labs., Inc. v. Nature's Own Labs.*, 529 F. Supp. 347, 349-50 (C.D. Cal. 1981) (same for loss of customer good will and control over reputation). Moreover, a "threat of irreparable harm is sufficiently immediate to warrant preliminary injunctive relief if the plaintiff 'is likely to suffer irreparable harm before a decision on the merits can be rendered.'" *Boardman v. Pacific Seafood Group*, 822 F.3d 1011, 1023 (9th Cir. 2016) (quoting *Winter*, 555 U.S. at 22). If Defendant is not immediately enjoined from continuing her wrongful conduct, Plaintiff will continue to suffer damage to his reputation and livelihood.

## III.    The Balance of Equities Tips in Plaintiff's Favor

Under the "balance of equities" analysis, a court must "balance the competing claims of injury" and "consider the effect" on each party of "granting or withholding of the requested relief." *Winter*, 555 U.S. at 24. Plaintiff has suffered and continues to suffer irreparable harm because of Defendant's defamatory campaign. By contrast, Defendant will suffer no harm from being required to stop publishing defamatory statements about Plaintiff and to remove her defamatory statements from social media and other places on the internet. "'[T]here is no harm to a defendant from an injunction which prevents continuing dissemination of false statements.'" *BNI Enterprises, Inc.*, 2015 WL 12644984, at *7 (quoting *POM Wonderful LLC v. Purely Juice, Inc.*, No. CV-07-02633CAS(JWJX), 2008 WL 4222045, at *16 (C.D.

9

Cal. July 17, 2008)). Plaintiff is entitled to a temporary restraining order because Defendant has already engaged in conduct calculated to injure Plaintiff's reputation and career. The harm to Plaintiff thus far outweighs the harm to Defendant if she is not prohibited from continuing to defame Plaintiff in the way she has done. As noted above, the threatened injury to Plaintiff is irreparable. Plaintiff is without the ability to know precisely the extent of Defendant's defamatory conduct and therefore seeks to stop Defendant from continuing her smear campaign.

## IV.    A TRO is in the Public Interest

The public interest inquiry "primarily addresses impact on non-parties rather than parties." *League of Wilderness Defs./Blue Mountains Biodiversity Project v. Connaughton*, 752 F.3d 755, 766 (9th Cir. 2014). Although the issuance of an injunction against speech based on falsity implicates First Amendment concerns, "courts routinely grant TROs restricting speech that is not merely false, but defamatory." *Recovery Housing Academy LLC v. Candelario*, 562 F. Supp.3d 333, 339-40 (D. Ariz. 2022).

At most, the impact of Plaintiff's requested TRO is neutral; given the TRO would enjoin defamatory statements, the overall impact is beneficial to the public interest. When the reach of an injunction is narrow, as the one Plaintiff requests here, limited only to the parties and has no impact on nonparties, the public interest will be at most a neutral factor in the analysis, rather than one that favors granting or

10

denying the preliminary injunction. *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1138-39 (9th Cir. 2009). Here, the impact of the requested injunction does not reach beyond the parties to this litigation, and this factor is therefore neutral in the analysis. *See id*. Even if, however, a temporary restraining order would reach beyond the parties to this litigation, it would impact only Defendant's social media followers and Plaintiff's employers, clients, co-workers, and ordination sponsors and religious endorsers, and that impact would be purely beneficial, as Defendant would be prevented from making misstatements and misrepresentations to these individuals.

Preventing misrepresentations is therefore in the general public interest.

## V.     The Court Should Not Require a Bond

Federal Rule of Civil Procedure 65 permits the issuance of a TRO "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). Despite the seemingly mandatory language, "Rule 65(c) invests the district court 'with discretion as to the amount of security required, *if any*.'" *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) (quoting *Barahona–Gomez v. Reno*, 167 F.3d 1228, 1237 (9th Cir. 1999)). In particular, "[t]he district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Id*.

11

The Court should not require Plaintiff to post a bond since there is no realistic likelihood that Defendant will be harmed from being prevented from publishing any further defamatory statements about Plaintiff or removing defamatory statements about Plaintiff from the internet.

## **CONCLUSION**

For the reasons stated above, Plaintiff respectfully requests the entry of a TRO to: (1) restrain the Defendant from publishing further defamatory statements about Plaintiff to any third party; (2) require Defendant to remove the three comments she posted on X on May 20, 2026 and July 2, 2026 regarding Plaintiff; and (3) require Defendant to remove from public access the Google drive containing documents concerning Plaintiff, the link to which Defendant included in her public comment to the Montana Licensing Reform Task Force;[2] (3) require Defendant remove any other defamatory statements Defendant posted on the internet about Plaintiff; and (5) grant any further relief, equitable or otherwise, that this Court deems just and appropriate.

//

---

[2] *See* https://drive.google.com/drive/folders/1dqOXuKH4NUiVcNqj1y6DJ5o9eTddoAmT?usp=sharing.

RESPECTFULLY SUBMITTED this 16th day of July 2026.


/s/ Gregory A. McDonnell
GREGORY A. MCDONNELL
**ORR MCDONNELL LAW, PLLC**
627 Woody Street
Missoula, MT 59802
Telephone: (406) 543-0999
Facsimile:  (406) 552-0560
greg@omlmt.com
katie@omlmt.com


RACHELE R. BYRD (*pro hac vice*)
**WOLF HALDENSTEIN ADLER**
**FREEMAN & HERZ LLP**
750 B Street, Suite 1820
San Diego, CA  92101
Telephone:  (619) 239-4599
Facsimile:   (619) 234-4599
byrd@whafh.com

*Attorneys for Plaintiff*

13