**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION**

| | |
|---|---|
| JAMES PATTERSON,<br><br>Plaintiff,<br><br>vs.<br><br>CINDY PATTERSON,<br><br>Defendant. | Cause No. CV-26-0048-H-BMM<br><br>**ORDER ON MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |

## INTRODUCTION

James Patterson ("Plaintiff") filed this action on July 10, 2026 (Doc. 1). Plaintiff filed a motion for a preliminary injunction and a Temporary Restraining Order ("TRO") on July 16, 2026. (Doc. 5.) Plaintiff requests the following relief (1) to enjoin Defendant Cindy Patterson ("Defendant") from publishing defamatory statements about Plaintiff to any third party; and (2) to require Defendant to remove alleged defamatory comments posted on the internet. (Doc. 5 at 12.) Defendant opposes the motion. (Doc. 10 at 11.)

## BACKGROUND

Plaintiff has served as a longtime clinician, chaplain, ordained minister, military officer, VA Chaplain, and owner of a Counseling Service Business in Montana. (Doc. 1 at ¶ 2.) Defendant currently resides in West Virgina and her

occupation remains unknown. (*Id*. at ¶ 5.) Plaintiff and Defendant (collectively the "Parties") met in Montana in 2014 when Plaintiff became Defendant's professional counselor. (Doc. 1 ¶ 9.) Defendant attended counseling sessions with Plaintiff over the course of 5 years. (*Id*.) Plaintiff and Defendant communicated off and on every couple of months following the end of their professional relationship. (*Id*. at ¶ 10.) Plaintiff contends that the Parties typically limited these communications to short discussions regarding Defendant's well-being. (*Id*.) Plaintiff alleges, however, that Defendant began to "aggressively pursue" him for a romantic relationship around August 2020. (*Id*. at ¶ 11.)

Plaintiff knew Montana had enacted ethical rules prohibiting therapists from entering romantic relationships with their former clients. (*Id*. at ¶ 12.) Upon investigation into the Montana Administrative rules, Plaintiff found it reasonable to believe he could pursue a romantic relationship with Defendant. (*Id*. at ¶ 12.) Plaintiff alleges to have consulted with an approved supervisor with the American Association for Marriage and Family Therapy in October of 2020. (*Id*. at ¶ 13). Plaintiff further alleges the supervisor informed him that a romantic relationship with a former client, such as Defendant, would not violate applicable ethical standards. (*Id*. at ¶ 13.)

The Parties began a romantic relationship and ultimately married on February 12, 2021. (*Id*. at ¶ 15.) The marriage began to deteriorate shortly thereafter in March

of 2021. (*Id*. at ¶ 16). The Parties remain legally married while currently going through divorce proceedings. (Doc. 5 at 2.) Plaintiff asserts that Defendant started to make statements concerning Plaintiff on social media and to third parties outside the divorce proceedings. (*Id*.)

Plaintiff alleges Defendant has published defamatory statements to churches, pastors, prayer networks, Christian media outlets, counseling clients and professionals, licensing boards, Plaintiff's ordination sponsor and religious endorser, military leadership, Montana public bodies, and social media. (*Id*. at 3.) Plaintiff alleges Defendant demonstrates her intent to continue posting defamatory statements regarding Plaintiff, as evidenced by her X posts on July 2, 2026. (*Id*.)

Plaintiff brought this action against Defendant for libel and slander. (Doc. 1 at ¶¶ 62, 73). Plaintiff seeks damages for loss of clientele, damage to his reputation, embarrassment, emotional distress, and harm in his ability to carry on his profession. (*Id*. at ¶ 80.) Plaintiff requests the Court to enjoin Defendant from publishing future defamatory statements and to remove published defamatory statements from the internet. (Doc. 5 at 12.)

## LEGAL STANDARD

District courts enjoy discretion regarding whether to grant or deny a temporary restraining order. *Miss Universe, Inc. v. Flesher,* 605 F. 2d 1130, 1132-33 (9th Cir. 1979); *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 22 (2008).

Federal Rules of Civil Procedure 65 governs preliminary injunctions and TROs. The standard for issuing a TRO proves "essentially identical" to the standard for granting a preliminary injunction. *Don't Shoot Portland v. City of Portland*, 465 F. Supp. 3d 1150, 1154 (D. Or. 2020); *see also Stuhlberg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir.).

TROs and preliminary injunctions remain extraordinary remedies that may be awarded only upon a clear showing that the plaintiff would be entitled to relief. *Winter*, 555 U.S. at 22. A party seeking a TRO or a preliminary injunction must establish the following four elements: (1) that they are likely to succeed on the merits; (2) that they are likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in their favor; and (4) that an injunction is in the public interest. *Id.* at 20.

**DISCUSSION**

Plaintiff argues he has suffered concrete harm from Defendant's alleged defamatory publications. (Doc. 5 at 3.) Plaintiff contends that he will continue to suffer irreparable harm from Defendant's future publications absent a TRO or a preliminary injunction. (*Id*. at 3, 4.) Lastly, Plaintiff requests the Court to order Defendant to remove her existing publications from the internet concerning Plaintiff. (*Id*. at 4.) Defendant counters that her speech is privileged as the published communications represent either (1) complaints made to state regulatory agencies,

or (2) matters of public concern. (Doc. 10 at 8, 10.) Defendant asserts truth as a defense even if her speech falls outside one the categories. (*Id*. at 10.) Defendant also argues that enjoining her from publishing future communications would qualify as a prior restraint on her speech in violation of the First Amendment of the United States Constitution. (*Id*. at 11.) The Court first will discuss the First Amendment issues regarding an injunction enjoining the Defendant from future speech. Second, the Court will evaluate whether Plaintiff has satisfied the requirements for a TRO and a preliminary injunction under Fed. R. Civ. P. 65 and *Winter*.

**I. Enjoining the Defendant from making future statements.**

Plaintiff requests Defendant be enjoined from publishing further defamatory statements about Plaintiff to any third party. (Doc. 5 at 12.) Defendant contends that Plaintiff's request seeks a prior restraint on Defendant's speech thereby making the request presumptively unconstitutional. (Doc. 10 at 11.) "A prior restraint is used to describe administrative and judicial orders forbidding certain communications when issued in advance of the time that such communications are to occur." *St. James Healthcare v. Cole*, 2008 MT 44, ¶ 26, 341 Mont. 368, 377, 178 P.3d 696. (quoting *Alexander v. United States*, 509 U.S. 544, 550).

Courts have recognized the significant risks to the First Amendment from issuing a preliminary injunction against speech based on the alleged falsity of the speech. *Recovery House Academy LLC v. Candelario*, 526 F.Supp.3d 333, 340 (D.

Ariz. 2022). A court may grant a TRO restricting speech that is not merely false but also proves defamatory. *Id*. Injunctions often can be ineffective or overbroad even when the circumstances warrant a preliminary injunction to enjoin a party from speaking. *Oakley, Inc. v. McWilliams*, 879 F.Supp.2d 1087, 1090-91 (C.D. Cal 2012).

Plaintiff alleges Defendant has made statements to third parties concerning the Parties' relationship and Plaintiff's personality. These statements allegedly include accusations of Plaintiff's potential involvement in sex trafficking and money laundering operations, and Plaintiff's associations with persons under federal scrutiny. (Doc. 1 at ¶ 64.) Defendant's statements regarding the Parties' relationship and her thoughts on how Plaintiff treated her may or may not be true. The alleged future statements have not been proven as defamatory. Additionally, if the Court were to enjoin Defendant from publishing her statements regarding their relationship, it would impose an impermissible prior restraint of her speech. For these reasons, the Court declines to enjoin Defendant from publishing statements to third parties regarding their relationship and her thoughts on Plaintiff's personality.

Further, a TRO or preliminary injunction prohibiting Defendant from "publishing further defamatory statements" would be both ineffective and overly burdensome. The Court would be placed in a role of having to determine continually what Defendant should be allowed to say. Plaintiff may prove some of Defendant's

statements to be defamatory in future proceedings. Plaintiff has not yet met this burden. As a result, a TRO or preliminary injunction ordering Defendant to be enjoined from speaking "defamatory statements" would be ineffective, overly burdensome on the Court, and a prior restraint on Defendant's speech.

## II. Whether the Plaintiff has satisfied the requirements for a preliminary injunction under Fed. R. Civ. P. 65 and *Winter*.

A plaintiff seeking a temporary restraining order must establish the following elements: (1) a likelihood to succeed on the merits; (2) a likelihood of suffering irreparable harm absent preliminary relief; (3) a balance of equities favoring the movant; and (4) that an injunction supports public interest. *Winter*, 555 U.S. at 20.

### A. Likelihood of Success on the Merits.

To prevail on a defamation claim, a plaintiff may prove defamation occurred either through libel or slander. Mont. Code Ann. § 27-8-101. Under either libel or slander, a plaintiff must show the defendant made a false and unprivileged publication about another person that caused damages. Mont. Code Ann. § 27-1-801- 803. The three-part requirement for actions involving defamatory libel includes the following elements: (1) the publication must be false; (2) the publication must not be privileged; and (3) the publication must be defamatory, in that it exposes the plaintiff to "hatred, contempt, ridicule, or obloquy," or tends to injure the plaintiff in their occupation. *Lee v. Traxler*, 2016 MT 292, ¶ 14, 385 Mont. 354, 384 P.3d 82. Statements that cannot reasonably be understood to assert actual facts about

someone remain opinions protected by the First Amendment. *Goguen v. NYP Holdings, Inc.*, 2024 MT 47, ¶ 59, 415 Mont. 356, 544 P.3d 868. "Terms which basically convey only a vague message that someone is a 'bad person' are not slanderous." *Id*. at ¶ 63, (quoting *Anderson v. City of Troy*, 2003 MT 128, ¶ 17, 316 Mont. 39, 68 P.3d 805).

**1. Defendant's statements posted on X.**

Plaintiff asks the Court to order Defendant to remove three comments she posted on X on May 20, 2026, and July 2, 2026. (Doc. 5 at 12.) On May 20, 2026, Defendant posted: "Professionals told me [the Plaintiff] groomed me in therapy" and "believe I'm not [the Plaintiff's] only victim." (Doc. 1 at ¶ 55.) Defendant described Plaintiff in another X post as a "communal narcissist," and claimed that "[the Plaintiff] groomed and abused her." (*Id.*) Plaintiff has not yet proven false Defendant's comment concerning Plaintiff's alleged grooming of her. Defendant labeling Plaintiff as a "communal narcissist" represents her opinion which merely accuses Plaintiff of being a bad person. Plaintiff has not yet proven the statements to be defamatory.

Plaintiff included in the Complaint an exhibit of text messages between the Parties. (Doc. 1 at ¶ 14.) The text messages included Defendant assuring Plaintiff he did not "exploit" their professional relationship. (*Id.*) Additionally, the Montana Board of Behavioral Health ("MBBH") allegedly dismissed Defendant's complaint

against Plaintiff. (*Id*. at ¶ 34.) The text messages and the MBBH's findings do not prove conclusory of whether Plaintiff exploited the Parties' professional relationship. Defendant's allegations differ materially. Now, Defendant alleges she had been "groomed" by Plaintiff. Plaintiff has not provided evidence to disprove the claim. Plaintiff has not yet shown a likelihood of success on the merits of this claim when Plaintiff has not demonstrated the statements to be false.

Defendant also posted on X, "Wyoming revoked [Plaintiff's] license," and mentioned the Parties' marriage. (*Id*.) The Parties agree they got married in February of 2021. Whether the state of Wyoming revoked Plaintiff's license remains currently unknown. Plaintiff claims he "voluntarily surrendered" his Wyoming license. (*Id*. at ¶ 35.). Defendant alleges the Wyoming Mental Health Professions Licensing Board (the "Board") recommended revocation of Plaintiff's license because of the Parties' relationship. Defendant asserts that the Board offered an alternative of the voluntarily surrender of Plaintiff' license in lieu of the Board formally revoking Plaintiff's license. (Doc. 10 at 5.) The Court recognizes Defendant's statements may harm Plaintiff in his occupation. Plaintiff has not yet introduced ample evidence showing the statements to be false. Plaintiff has not shown a likelihood of success on merits of the claims of his libel and slander for Defendant's posts on X.

**2. Defendant's public Google Drive link.**

Plaintiff also requests the Court to order Defendant to remove from public access the Google Drive link containing documents concerning Plaintiff. (Doc. 5 at 12.) Plaintiff alleges the Google Drive link contains confidential documents and libelous statements concerning Plaintiff. (Doc. 1 at ¶¶ 52, 53.) Plaintiff argues the documents within the Google Drive link contain defamatory statements about the Parties' relationship, Plaintiff's actions before or during the divorce proceedings, and allegations Plaintiff took advantage of Defendant. (*Id*. at ¶ 57.)

The comments regarding the Parties' relationship have not yet been proven false. Second, based upon Plaintiff's allegations in his Complaint, these statements merely describe Plaintiff as a bad person. Defendant alleges Plaintiff engaged in unethical practices during the Parties' relationship. Defendant further alleges the Board in Wyoming "recommended" Plaintiff's license be revoked because of the relationship between Plaintiff and Defendant. (Doc. 10 at 5.) Plaintiff contends he "voluntarily surrendered" his license as he no longer needed it. (Doc. 1 at ¶ 35.) Plaintiff has not yet proven the statements to be defamatory as the parties argue about the truthfulness. Plaintiff has not shown a likelihood of success on merits of the claim of libel or slander for the Google Drive contents.

**B. Likelihood of Suffering Irreparable Harm.**

Plaintiff argues he likely would suffer irreparable harm if the Court fails to grant an injunction because "Plaintiff will continue to suffer damage to his reputation and livelihood." (Doc. 5 at 9). Plaintiff has failed to provide evidence that Defendant's statements are false. The Court bases its reasoning in finding that Plaintiff has not suffered irreparable harm primarily on Plaintiff's failure to show the falsity of Defendant's statements posted on X and the internet. Further, monetary damages likely would provide an adequate remedy for the claims, and the Court will address fully the issues regarding Plaintiff's potential damages in future proceedings.

**C. The Balance of Equities.**

A Court must "balance the competing claims of injury" and "consider the effect on each party of the granting or withholding of the requested relief" under the "balance of the equities" analysis. *Winter*, 555 U.S. at 24. Plaintiff alleges he faces potential ongoing harm to his reputation if the statements on the internet are not removed. Defendant, by contrast, will suffer little hardship by removing her statements from the internet. For these reasons, the factor slightly tips in favor of Plaintiff.

**D. Public Interest.**

The public interest inquiry "primarily addresses impact on non-parties rather than parties." *League of Wilderness Defs./Blue Mountains Biodiversity Project v.*

*Connaughton*, 752 F.3d 755, 766 (9th Cir. 2014).The public interest would represent, at most, a neutral factor in the analysis when an injunction limits only the parties and does not impact nonparties. *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1138-39 (9th Cir. 2009). Plaintiff's requested TRO likely would reach only the Parties. The Court concludes that the public interest does not weigh heavily either for or against either of the Parties.

## CONCLUSION

The Court declines to grant Plaintiff's request for a TRO and preliminary injunction enjoining Defendant from "publishing further defamatory statements" concerning Plaintiff. Plaintiff has not yet shown the statements to be defamatory and enjoining Defendant would involve an unconstitutional prior restraint. Second, Plaintiff has failed to establish all the requirements under Fed. R. Civ. P. 65 and *Winter*. The Court declines to grant a TRO or preliminary injunction ordering Defendant to remove her publications concerning Plaintiff from the internet. The Court fully will address all these issues in resolving the merits of Plaintiff's claims.

## ORDER

Accordingly, **IT IS ORDERED** that Plaintiff's Motion for Preliminary Injunction and Temporary Restraining Order (Doc. 5) is **DENIED**.

DATED this 18th day of August 2026.

Brian Morris

Brian Morris, Chief District Judge
United States District Court